May it please the Court, my name is Jim Marner. I represent Nick Blankenburg and his mother and father, Karen and Carl. I'd like to reserve about two minutes, if I may, for rebuttal. If we can figure out with the clock what two minutes is, we'll certainly give it to you. I noticed that. You know, what the heck, make it all that more grating. Anyway, if you read the appellee's brief, you think we have to make a bunch of decisions on a bunch of different legal issues. But I think really we're here to talk about one issue, and that's the discretionary function exception under the Federal Tort Claims Act. And did the District Court err in ruling that the decision not to sign a known dangerous curve up in the Coconino National Forest is protected? Does the government have immunity? And my answer to that is the Court did err. There apparently were a number of accidents over the years at this intersection. Is that right? It's not an intersection, Judge. It's actually a curve. Okay. The curve. Right. And actually, I don't know if I kind of stumbled on that when I went up there. Actually, I just asked you for a yes or no. Yes. You're right. You know, I don't want you doing that. I'm going to start saying yes or no, Your Honor. I'm sorry. Anyway. So there were, over the years, there were six or seven, eight accidents at this curve. Yes, Your Honor. What evidence in the record is there, my understanding is these accidents in some cases were reported to the Coconino County Sheriff's Office. Yes. What evidence in the record is there that these accidents were reported to the Forest Service? A couple things, Your Honor. First, the National Forest Service and the Coconino County Sheriff's Department were both parties to a — to an agreement wherein Coconino County and the National Forest Service would share various policing duties and other things like that on the Coconino National Forest. One of the provisions — It sounds like where we're going is they should have done that. No. No, Your Honor. They did. Do you have actual proof they were aware of these accidents? There's at least a question of fact, and I'll tell you it is good, strong proof. Tell us about it. Okay. The — they had these agreements, and the agreements included, among other things, a duty imposed upon the Coconino County Sheriff's Department that said the Coconino County Sheriff's Department, upon receipt of notice of accidents on the Coconino County Forest grounds, will provide information to the National Forest Service. What evidence is there that they did that? There was testimony from a sergeant service who was a longtime sheriff's deputy up in the Coconino. When I deposed sergeant service, sergeant service said — and he actually, not even in response to my question, but he said that, yes, there was a good, strong line of communication between those two entities, that is the National Forest Service and the Coconino County Sheriff's Department reports, which are in the record, were transferred or transmitted to the National Forest Service. So — and that was his testimony. Now, counsel for the appellate will probably point out that in an affidavit, after he gave his sworn testimony, he backed off that. But we do have sworn testimony by sergeant service that he did this, that that was the — that was the protocol. And it — it really gels with what was required under this agreement between the National Forest Service and Coconino County. So your argument is this creates at least a question of fact unresolvable by summary judgment at the trial court level? Absolutely, Judge. And it's our position that the district court really made a credibility determination, discounted what sergeant service said under oath during the deposition when I was examining him, and rather accepted the later affidavit prepared by the government where he backed off this testimony where he said that notice was indeed given to the National Forest Service. Anyway, we're here to talk about this exception of the Federal Tort Claims Act. Now, the Federal Tort Claims Act, it's not the exception. The exception is the discretionary function immunity. If you read the government's argument in this case, they're saying the Federal Tort Claims Act is the exception. It's not the case. I cited to this Court a number of decisions, a number of Ninth Circuit decisions, where the Court said, look, we cannot let this exception swallow up, emasculate, nullify the Federal Tort Claims Act. This Court — Well, the Federal Tort Claims Act is an exception. It's an exception to governmental liability. Right. But for its existence, you wouldn't be standing here. Absolutely. I'm not saying that at all, Judge. But farther down the line, the exception is a discretionary function exception. And the Court said in a number of the opinions — the Court said in a number of the opinions that I cited to you that it's a broad waiver. And this exception, this discretionary function exception which provides immunity, is narrowly — is to be narrowly construed because if you — if you give it a broad application, what's the point of having the Federal Tort Claims Act in the first place? For the — for the government to have this immunity, it's their burden. They've got to make — they've got to make a double showing. First, they've got to show that there was no regulation that specified the action that needed to be taken. And secondly, even if you find that there was no regulation, the Court has to decide, you know, is this a decision that we really want to afford immunity to? Is this a decision that implicates political or social or economic or these broad, wide-reaching implications? You're assuming that there was an affirmative decision by the Forest Service not to sign this curve. Excuse me. Your Honor, I'm assuming, and the evidence has shown, there was an affirmative decision by the Forest Service to sign this road and the other roads that form the peak loops and to sign it safely, and that the Forest Service did not do that. That's what I'm assuming. And what do you point to? In terms of that, Judge, a number of things. First, within 1,200 feet of this dangerous curve, the Forest Service had decided, you know, let's sign it. They put up reflectors on both ends of the narrow bridge. Farther up the road, they signed cattle guards. As the loop continues around the San Francisco peak, I drove that and had an expert drive that, and it's all on the record. And turn after turn after turn, it has chevrons, reflectors, curve warning signs. What was bothering me in the record is usually in these government cases, we have some kind of a policy or regulation, and we see if they followed it or what the confines of the policy or regulation are. You're kind of coming at it a different way, and that is there's a bunch of signs out there, but there's no sign here. Therefore, we have to assume that they had in place some mandatory safety policy. Yes, Your Honor. And actually, I'm basically taking the second step first. The first step is, was there a specific policy or was there a specific protocol or specific regulation that said they had to sign these roads? And I cited a number of them in my brief. And one of the things I did cite was that the government had a mandatory requirement that in any high accident area, a study had to be done, and if it was determined it was a high accident area, something had to be done about it. The government's own expert witness, a man by the name of Richard Creed, who had been with the National Forest Service as an engineer, road engineer, for 40 years, something like that, he testified that, yes, this was something that they had to, this was something that they indeed had to comply with, and if indeed they did have notice of these wrecks, then they should have done it. And if they didn't do it, they weren't complying with specific regulation. And that brings us back to the question of fact, Your Honor. But because there are so many of these regulations, and I'm sure Counsel for the Appellee will cite the big broad ones and I'll cite the narrow ones, I did put that in my brief. But what I'd really like to talk about is the fact that this Court has routinely held, I mean repeatedly held, that a decision not to put up a warning sign at a known hazard, it doesn't invoke the immunity under this exception. In Faber v. U.S., the Court said, quote, I'm sorry, 56 Fed 3rd 1122, this is the Ninth Circuit. The Court said, quote, the question of what constitutes adequate warning is typically not related to broad public policy. The Court said you don't get off the hook under this discretionary function immunity in this case where they failed to warn of a known hazard. In the National Park, Saylor v. U.S., 832 Fed 2nd 120. I think they're in your brief. They are. Quote, we doubt that any decision not to provide adequate signs would be of the nature and quality that Congress intended to shield from tort liability. That's known hazard for which the acting agency is responsible is not the kind of broad social, economic, or political policy decision that the discretionary function exception is intended to protect. And if you think about it and apply it to this case, it makes perfect sense. In this case, we have we have a decision to sign the roads, but we didn't do a very good job of it, but we're still protected under the under this exception. And this Court, again, has held that repeatedly. And I think Judge ---- What do you do? You know, we have these cases and then we always have to put the mosaic together. You have the Valdez case. Sure. The basic principle of which is when you're in these national parks, they have fairly broad discretion to figure out where to sign and not to sign, even if there's safety or other hazards that the public might fall into. How does that fit into your complement of cases? It's fact-driven, Judge. And I will tell you, reading this Court's decisions on this, you got a lot of them. And, you know, the ones I cited and the ones Mr. Sturgill has cited in his brief, at first blush you think, boy, they're all over the place. But you look and it's fact-driven. Look at Valdez and look at Childers. And I can't remember, I think it was Valdez, they're talking about a nonexistent path. The Court said, look, I think it was Valdez where the plaintiff fell while climbing down the side of a mountain near a waterfall. I believe that was Valdez. And the plaintiff said, well, you should have put a path and signs. And the Court said, no, you know, that is a broad socioeconomic policy. I mean, you know, putting up a path where one does not exist, I mean, that's something much more different than putting a warning sign on a curve in the road. And if you look at the cases I cited versus the cases that Mr. Sturgill cited, you see that. In the cases I cited, we're talking about roads, we're talking about established byways, things like that, where you have a hazard and they didn't put up a warning or anything, the Court says, no, you don't get that immunity. In the other cases where, you know, to build a path or not to build a path, things like that, the Court said that does fall into the discretionary function exception and we will grant immunity. The thing is, it's all fact-driven. And in this case, the facts are very, very similar to those where the Court has held, look, this does not implicate the kind of reasons, the broad policy reasons that we think warrant the exception. Do you want to save a little time for rebuttal? I better. Thank you. We'll hear from the government this time. Good morning, Your Honors. Lowell Sturgill from the Department of Justice representing the United States. Good morning. Good morning. We believe the district court correctly held that this case is controlled by this Court's decisions in the Blackburn, Childers and Valdez cases to which Judge McKeown referred. Those cases hold, we believe, that signing decisions in national park and national forest areas involve policy decisions and are hence protected by the discretionary function exception unless the government has undertaken a mandatory duty to sign a particular location. And that is what's missing in this case. The plaintiffs have ---- So in your judgment, by your lights, it would not matter how many accidents there had been at this intersection or whether the Forest Service knew of them or the details of them. That's correct. So another ---- It could have been a hundred accidents, no duty. That's correct. So if a hundred people fall into the hot pools at Yellowstone National Park right before the park ranger's very eyes and they never put up a sign, that's okay. Well, let me say this. So the notice of the argument he made, which is if you have absolute notice of a known defect and you do nothing, under your construct, the government would have no liability ever, correct? Let me try to explain this, because I think you've stated the hardest case. And I think the notion of Childers and Valdez and Blackburn is that these kinds of signing decisions involve aesthetic balancing consideration, balance the need for aesthetics against the need for safety. If you have a hundred people killed at an intersection, hypothetically, the same intersection, what kind of beauty or value judgments are involved in putting up a sign warning people in advance that there's a very sharp curve ahead? Well, that's what I was trying to get to. I think you can probably state a hypothetical that you would find that that sort of balance doesn't even exist because one side so gravely outweighs the other. It's hard to imagine the exception applying to that. Although, if you take, I think, the Blackburn case by its own reasoning, and look, there's no mandatory — if you stipulate there's no mandatory duty, and if you stipulate the government has got to weigh beauty against safety, then I think you have to find the discretionary function exception applies. And that's why my original answer was yes. But I have to say, you know, maybe there's a caveat. If you have like the world's worst case, which you both just stated, where you find that there really isn't even a balance involved, maybe you could say that. But I wouldn't concede that because no court has ever held that, because I think, again, it sort of runs against the theory from the Blackburn, Childers, and Valdez cases themselves. You're kind of now on the policy side of the discretionary function exception. What about the side where you talk about no mandatory duty? On the other hand, Mr. Marner says if you look at various regulations and processes that are set out, that there is, in fact, a mandatory duty, and they breach that. They didn't follow it. It seems to me that's the harder question. How do these regulations, rules, and various policies fit in this case? Let me say two broad things, and then I'll get to the specifics. The first thing is I think you have to read all the regulations that he comes up with in light of regulations he doesn't address. And those are the regulations that say, again, the Forest Service has to balance safety against aesthetics. And we have cited those in our brief. 36 CFR 219.1b1 says the Forest Service must consider intangible benefits such as beauty, inspiration, and wonder. The Forest Service manual, which he cites, requires the Forest Service to consider environmental and resource protection requirements, visual quality objectives. Let me establish one thing I think is important to find out. Is there any record that demonstrates or even suggests that a conscious decision was made at this curve not to put up a sign in a business study practice? The record does not contain that kind of decision. So, again, that's not unusual. We're in a situation of moving backwards from there, trying to decide, is this the extreme case where that couldn't have been the judgment because it's so extreme on their lives if I'm lost and so forth? Or not. And is there anything to suggest, okay, there's no record, but, in fact, somebody thought about this and said, no, this isn't a good place to put up a sign. We're not going to put up a sign here. I think there are a couple of things. First of all, there is an affidavit from Mr. Bell in the record and other affidavits which generally describe the program that the Forest Service does have for addressing safety in these parks. And what it says is it basically mirrors the regulations. It says the Forest Service supervisor, his job is to take these, to view what he has in his area and make decisions about what's necessary. Now, that doesn't say he's got an obligation to put a sign on a particular place, but it does set up a scenario in which these kinds of decisions are being made. The second thing I think is very critical about this case is the context. And that is this is a mountain road in a remote area. It's a dirt road. It's not paved in a remote area. And I think in that kind of a context, you can just presume that, and everybody knows what's going on. This is a place where people go to get away from it all, so to speak. And that's why on this road there aren't any warning signs, other than the couple that are ---- Breyer. I have the idea that if you take the loop that is at least somewhat promoted on the other two numbered segments, you find lots of signs. And not nearly so many signs, perhaps, on this segment, but there are other signs giving warnings. Fisher. I don't think you can extend the analysis beyond this particular road. I think it's a clever litigation strategy to try to do that by looking at the whole loop. But this is a distinct part of a road that goes between Arizona 180 goes from Flagstaff up to, I believe, the Grand Canyon. Towards the Grand Canyon. Right. And this road sort of cuts out at the bottom and reconnects at the top. It's a distinct piece of road. And, again, on that road, you're right. There are a couple of other signs. But if you look at just the pictures that have been provided, in this case of 10 miles of roads, and you've got a couple of signs or two or four or something like that. But the predominant scene that you have when you drive this road is there are no signs. There are no speed limit signs, for example, anywhere on this road. And you'd think if the government had made a decision to make sure that people are safe on this road and bind itself to a mandatory duty, the first thing it would have done is put up a speed sign so people can know how fast they're supposed to drive. But they didn't. And the reason is, again, we're in a remote area where people go. They don't want to see signs out there, as a general matter. They want to see the wilderness. And I think that's a critical fact that distinguishes this case from a number of cases that the plaintiff cites. And let me say also that I believe, and our brief says this, all the cases that he cites where the court has held that there's a signing duty are cases where the court did find the existence of a mandatory duty. The Faber case, for example, I think is very instructive. There, there was an accident on a road, and the government looked at that particular location and said, we need to fix that. We need to put some sort of sign there. And what happened was they negligently did it, or they failed to do it. And that, as you can see, is a specific act of negligence in implementing a safety decision. And that's very different from this case. And to bring the analogy here, let's say, for example, that after this accident, the FOIA server said, well, we need to do something about this part of the curve. Let's put up a sign. And let's say the engineer put up a sign, but the sign was too low, and you couldn't see it. Well, the discretionary function would not protect that. That's just an act of ordinary engineering negligence. And that, I think, explains the cases that go against us. There's a mandatory duty in each case. The Marlowe spare case, which, Judge McEwen, you had, you probably remember all too well, was another case where you had a mandatory duty. That case, it was stipulated that OSHA regulations applied to this logging operation. We all know what that means. OSHA is regulating in all its minute glory of what's going on in a particular logging operation. You don't have that here. And, Judge Hawkins, I also wanted to point out, as I was preparing for argument, I went back over the O'Toole decision, which you were on the panel in that case. And in that case, the discretionary function exception did not apply to ordinary ditch, routine ditch maintenance. But the Court was very careful in its opinion near the end to say the following and to distinguish that from a National Park Service decision, I'm quoting, not to put up a guardrail that will block visitor views. And I think that case, again, in making that statement, sort of segments off this area where we're talking about signing decisions in national parks. They involve policy decisions the Court has held because of the balancing of aesthetics versus safety, unless the government undertakes a mandatory duty with respect to a particular area. Probably a good day to cite O'Toole. I'm sorry? Probably a good day to cite O'Toole. I think we have your argument in hand. Thank you for coming in today. Let's hear Ramone. Thank you. Throughout Appelli's argument in this case, they've tried to depict Forest Service Road 151 as this little track, you know, maybe you might find a goat herder on it. Not the case. Not only does this go through National Park, but it goes through private land. 30 or 40 residences are out there. School buses go up to the Nature Conservatory. This road is advertised in the L.A. Times and the Phoenix Republic. Their records indicate that it's the third busiest road in the whole National Forest Service. This is not some little trail. What Laurel said up here really struck me. And, you know, Your Honor, your Marlis-Bear, I don't know if it's Marlies or Marlis-Bear decision, I think is right on point as well. The undisputed evidence in this case indicates that the National Forest Service did undertake a duty to sign this road. The signs were up there. They took a duty to make this road safe for the general public. A couple days before this wreck occurred that brings us here today, they run a grader through the area. It's in the records. The police photos, Sheriff's Department photos, show you can actually see the tread marks from the grader. It was the grader going through there. It was that recent. This is not a little dirt path. The Marlis-Bear medicine case and also even, interestingly, Valdez, I think, really supports our position here. In Valdez, one of the cases upon which the appellant relies on so heavily, it says, we agree with the Summers decision, which would support our position, that where challenged governmental activity involves safety considerations under an established policy, rather than the balancing of competing policy considerations, the rationale for the discretionary function exception falls away and the U.S. will be responsible for the negligence of its own employees. There is no question in this case that the United States government undertook a duty to provide a safe road for people using that road, and they were negligent in doing so by failing to mark this curve. Okay. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted and we'll proceed to the last case on the calendar this morning, the San Carlos Apache Tribe versus the United States of America with intervention.
judges: Hawkins, McKeown, Clifton